IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Travis Lee Bowen, ) | Civil Action No.: 2:10-1848-CMC-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| James Doriety, Scotty ) | |
| Bodiford, Tracy Krein, ) | |
| and the Nurse and or ) | |
| the Med. Tech at Greenville ) | |
| County Detention Center, ) | |
| ) | |
| Defendants. | |

The pro se Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. This matter is before the Court on the Defendants' Summary Judgement Motion. (Dkt. # 27.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action seeking damages for alleged civil rights violations. On November 27, 2010, the Defendants filed a Motion for Summary Judgment. (Dkt. # 27.) On November 19, 2010, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. # 28.) On December 9, 2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion. (Dkt. # 30.)

**FACTS**

In his Complaint, the Plaintiff alleges that while he was incarcerated at the Greenville County Detention Center ("GCDC"), on November 26, 2009, he noticed a skin infection on his wrists and legs. (Compl. at 3.)[1] He states he informed medical staff during the morning distribution of medication, and he was told by the medical technician Snoddy to report it to the evening medical staff if it worsened. *Id.* The Plaintiff alleges it became worse throughout the day and at 9:00 p.m., he reported it to the medical technician Morgan who was distributing medication. *Id.* He alleges that she responded, "What am I supposed to do about it?" and walked away. *Id.* He states that the next morning, November 27th, he filed a request for medical treatment in which he stated he had a knot and/or whitehead on his right wrist, a bump on his calf, and two bumps on his right thigh. *Id.* On November 28, 2009, the Plaintiff alleges that, although he was not seen by a doctor, he was given antibiotics. (Compl. at 3-4.)

The Plaintiff then alleges that on January 12, 2010, he developed more lesions on his face, back, and legs which he reported by filing a medical treatment request form. (Compl. at 4.) He alleges that approximately two weeks later he was seen by medical staff, but that by that time the lesions had almost completely healed except for small sores on his chin and nose. *Id.* He states he requested that the sores be cultured and the nurse took a culture, but he then saw her throw something into the trash can. *Id.* He states he was prescribed Bactrim, topical ointment, and Motrin. *Id.* He states that after taking the medication, the sores healed and that he received notice that his culture was negative for

---

[1] It appears that the Plaintiff is now incarcerated at Kirkland R&R. (Dkt. # 32.)

a MSRA infection.  (Compl. at 5.)[2]  Because he was never billed for the lab testing, he alleges the culture was never sent for testing and that the nurse fabricated the results.  *Id.*  He alleges he still gets small sores and the medical staff have not attempted to determine the cause.

He alleges he developed more lesions on June 17, 2010, and submitted a request for medical treatment that same day.  He alleges he did not receive any treatment and submitted a second request for treatment on June 24th, and that on June 26th, he was given an antibiotic.  In an apparent allergic reaction to the medications, he alleges that he developed a rash which he reported to the medical staff on a daily basis, but it was not until July 8th that he received Benadryl and he was not examined by a doctor.  He alleges the medical staff never tried to determine the cause of his rash and did not properly treat his staph infection. (Compl. at 7.)

The Plaintiff also alleges that the inmates at the GCDC should not be cleaning the facility because the inmates have not been properly trained or instructed on how to sanitize. He alleges the staff at the GCDC also does not follow the proper protocol when treating an inmate with a staph infection.   (Compl. at 7-8.)

The Plaintiff alleges that he is at risk, or already has already developed, MRSA which will affect him and may cause him pain and suffering for the rest of his life.  (Compl. at 15-16.)  The Plaintiff is seeking actual damages and future damages "in the event of future difficulties deriving from this disease."  (Compl. at 17.)

---

[2] MRSA is an acronym for Methicillin-Resistant Staphylococcus Aureus, a bacterial staph infection that is highly resistant to some antibiotics.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position

4

is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION[3]

### Denial of Medical Treatment

The Plaintiff alleges the Defendants have been deliberately indifferent to his medical needs. The Defendants contend the Plaintiff has failed to state a claim. The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

---

[3] It appears at the time of the incidents alleges in the Complaint, that the Plaintiff was a pretrial detainee. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992).

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer v. Brennan,* 511 U.S. 825 (1994); *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) ( *quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987)).

Further, claims of mere negligence, malpractice, or incorrect diagnosis are not actionable under § 1983. *Estelle*, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted). *See also Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985).

The Plaintiff has failed to show that the Defendants were deliberately indifferent to his medical needs. Based on the Plaintiff's own pleadings and the Plaintiff's medical records, (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2), it is undisputed that the Plaintiff

6

was seen and treated for his skin lesions by the medical staff at the GCDC on several occasions. The Plaintiff was prescribed antibiotics and pain medication and alleges the symptoms did subside. *Id.*

The records establishes that the Plaintiff received continuous medical care at the GCDC. At most, the Plaintiff is asserting a delay in his treatment or a medical malpractice or negligence claim on the part of the Defendants. However, there is no medical evidence in the record that any such delays resulted in any injury to the Plaintiff. *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1188-1189 (11th Cir. 1994) (holding "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"). The medical evidence fails to show that the Plaintiff suffered any significant injury caused by the delay in treatment and this claim is therefore subject to dismissal. *Green v. Senkowski*, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) (finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim); *House v. New Castle County,* 824 F.Supp. 477, 485 (D.Md. 1993) (holding plaintiff's conclusory allegations insufficient to maintain claim). Furthermore, as held in *Estelle*, 429 U.S. at 107, a complaint that medical personnel have been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. The Plaintiff has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. The Plaintiff has not shown that any conduct by these defendants "shocks the conscious" as required by *Miltier v. Beorn*. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). A disagreement as to the proper treatment to be

received does not in and of itself state a constitutional violation. Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975).

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier,* 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, turning to the Plaintiff's allegations that he was generally denied medical care at the GCDC, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his general medical treatment against the non-medical Defendants. The Plaintiff has failed to show that the non-medical Defendants deliberately interfered with the Plaintiff's general medical treatment. Therefore, any claims against the non-medical Defendants for medical indifference based upon the Plaintiff's general care while at the GCDC fail.[4]

The Plaintiff also alleges that the skin culture that was taken was not sent to the lab, but rather thrown away. Further, he alleges that the results were fabricated to show that he did not have MRSA. However, the Plaintiff's medical records show that a skin culture was sent to the Greenville Hospital System on February 3, 2010, and the results showed that

---

[4]The Plaintiff has named only one individual medical personnel member as a Defendant, Medical Director Tracey Krein. The Plaintiff also named as a Defendant the Medical Staff at the GCDC. (Compl. 13-15.) The use of the term "staff" or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Barnes v. Baskerville Corr. Cen. Med. Staff*, 2008 WL 2564779 (E.D.Va. 2008).

8

the Plaintiff did have a staph infection, but not MRSA. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 at 18-19.)

The undisputed facts reflect that the Plaintiff requested and received medical care at the GCDC on numerous occasions and that any delay did not cause him any significant injury. Furthermore, even if the Plaintiff were able to show that Defendants' actions somehow constituted medical negligence or medical malpractice, these claims are not actionable under § 1983. Accordingly, the Defendants should be granted summary judgment on the Plaintiff's deliberate indifference to medical needs claims.

**Conditions of the GCDC**

With respect to the Plaintiff's claims of unsanitary conditions at the GCDC, the Plaintiff has not alleged that any of the Defendants were personally involved in the allegedly unsanitary conditions. Rather, the Plaintiff alleges that the named Defendants are responsible only because they were employed or supervised employees at the GCDC. This is not a sufficient basis upon which to establish individual liability under § 1983. It is well established that government officials have no vicarious liability in a § 1983 action because "there is no concept of strict supervisor liability under section 1983." *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 691-695 (1978). Supervisory officials can be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. This "supervisor" liability "is "not premised upon respondeat superior but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994) (*quoting Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir.1984)). The Plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed an

9

unreasonable risk of constitutional injury to Plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw*, 13 F.3d at 799.

In any event, to prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir.1988)).  Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. *Farmer v. Brennan*, 511 U.S. 825. The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Here, the Plaintiff has failed to show that the Defendants actually knew of and disregarded a substantial risk of serious injury to him, that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the Defendants, or that the Defendants had an express intent to punish him.  The Plaintiff has not demonstrated that the Defendants failed to provide him with humane conditions of confinement or that he suffered any actual injury as a result of the alleged conditions of his confinement.  For instance, the Plaintiff alleges that inmates are not properly cleaning the GCDC, but he fails to produce evidence that this caused him any actual injury.  Further, the Plaintiff's allegations are general in nature, and they do not contain the requisite specificity in order to constitute a violation of his constitutional rights under the Fourteenth Amendment. Therefore, no viable § 1983 claim has been presented and summary judgment

is appropriate on this claim. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) (finding no viable claim where pretrial detainee temporarily had to sleep on a mattress on the floor because such conditions do not necessarily rise to the level of a constitutional violation). Accordingly, the Defendants should also be granted summary judgment on the Plaintiff's conditions of confinement claims.

## CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 27) be GRANTED and the Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

                                       s/Bruce Howe Hendricks
                                       United States Magistrate Judge

February 9, 2011
Charleston, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).